IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

BROADCAST MUSIC, INC., et al.,

      Plaintiffs,

   v.

DISORDER LLC d/b/a OTTOBAR and
TECLA TESNAU, individually,

      Defendants.

CIVIL ACTION NO.:
1:25-cv-03218-JRR

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

PAGE

I.      PRELIMINARY STATEMENT ........................................................................1

II.     STATEMENT OF UNDISPUTED FACTS ........................................................1

III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ........................................4

        A.    There Are no Genuine Issues of Material Fact ........................................5

        B.    The Defendants Are Vicariously Liable for Acts of
              Infringement Committed at Ottobar........................................................7

IV.     PLAINTIFFS ARE ENTITLED TO THE RELIEF
        THEY REQUEST........................................................................9

        A.    Injunctive Relief........................................................................9

        B.    Statutory Damages ........................................................10

        C.    Attorney's Fees and Costs ........................................13

V.      CONCLUSION........................................................................13

TABLE OF AUTHORITIES

CASES:                                                                                                    PAGE

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242, 247-248 (1986) ..........................................................................................5

Boz Scaggs Music v. KND Corp.,
 491 F. Supp 908 (D.Conn. 1980) ..................................................................................6, 11

Bridgeport Music, Inc. v. Justin Combs Publ'g,
 507 F.3d 470, 492 (6th Cir. 2007) ..................................................................................12

Broadcast Music, Inc., et al. v. Cameron Hospitality, Inc., d/b/a Fosters, et al., No. 5:11-CV-152-
BO ..................................................................................................................................18

Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,
 441 U.S. 1 (1979)..............................................................................................................2

Broadcast Music, Inc. v. Entertainment Complex, Inc.,
 198 F.Supp.2d 1291 (N.D. Ala. 2002)..............................................................................17

Broadcast Music, Inc. v. Fox Amusement Co.,
 551 F. Supp. 104 (N.D. Ill. 1982) ....................................................................................18

Broadcast Music, Inc. v. Moor-Law, Inc.,
 484 F. Supp. 357 (D. Del. 1980)........................................................................................2

Broadcast Music, Inc. v. Niro's Palace, Inc.,
 619 F. Supp. 958 (N.D. Ill. 1985) ..........................................................................9, 11, 13

Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc.,
 657 F. Supp. 1016 (S.D. Miss. 1987)..........................................................................11, 12

Broad. Music, Inc. v. Pub Dayton, LLC, et al.,
 No. 3:11-cv-58, 2011 U.S. District LEXIS 57211
 (S.D.Ohio May 27, 2011) ................................................................................................18

Broadcast Music, Inc. v. The Peppermint Club, Inc.,
 229 USPQ 534 (N.D. Ohio 1986)...............................................................................10, 11

Broadcast Music, Inc. v. Triple L Vending, Inc.,
 5 USPQ2d 1346 (W.D. Tex. 1987)..............................................................................15, 18

Broad. Music, Inc. v. V3 Club Company LLC d/b/a The Highlands, et al. CV-09-08039 (C.D.CA

June 21, 2010................................................................................................................18

Chi-Boy Music v. Charlie Club, Inc.,
 930 F.2d 1224, 1229-30 (7th Cir. 1991).....................................................................18

Dream Dealers Music v. Parker,
 924 F. Supp. 1146, 1153 (S.D. Ala. 1996)..................................................................17

EMI Mills Music, Inc. v. Empress Hotel, Inc.,
 470 F.Supp.2d 67 (D. Puerto Rico 2006)....................................................................14

F.W. Woolworth Co. v. Contemporary Arts, Inc.,
 344 U.S. 228 (1952).....................................................................................................14

Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,
 443 F.2d 1159 (2d Cir. 1971).......................................................................................10

Halnat Pub. Co. v. L.A.P.A., Inc.,
 669 F. Supp. 933 (D. Minn. 1987)...............................................................................15

Herbert v. The Shanley Co., 242 U.S. 591 (1917)..........................................................12

International Korwin Corp. v. Kowalczyk,
 855 F. 2d 375 (7th Cir. 1988) ......................................................................................15

M. Witmark & Sons v. Calloway,
 22 F.2d 412 (D.Tenn. 1927).........................................................................................11

Milene Music v. Gotauco,
 551 F. Supp. 1288 (D. R.I. 1982)......................................................................11, 12, 19

Music City Music v. Alfa Foods Ltd.,
 616 F. Supp. 1001 (E.D. Va. 1985) .............................................................................15

Nick-O-Val Music Co. v. P.O.S. Radio, Inc.,
 656 F. Supp. 826 (M.D. Fla. 1987)........................................................................11, 15

Prater Music v. Williams,
 5 USPQ2d 1813 (W.D. Mo. 1987) .........................................................................14, 15

Rodgers v. Eighty Four Lumber Co.,
 623 F. Supp. 889 (W.D. Pa. 1985)...............................................................................15

Sailor Music v. IML Corp.,
 867 F. Supp. 565 (E.D. Mich. 1994)............................................................................17

Sailor Music v. Mai Kai of Concord, Inc.,
  640 F. Supp. 629 (D. N.H. 1986)........................................................................................11, 12

Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc.,
  316 F. 2d 304 (2d Cir. 1963)....................................................................................................10

Twentieth Century Music Corp. v. Aiken
  422 U.S. 151, 157 (1975)...................................................................................................13, 14

Warner Bros., Inc. v. Lobster Pot, Inc.,
  582 F. Supp. 478 (N.D. Ohio 1984).........................................................................................11

Wihtol v. Crow,
309 F.2d 777 (8th Cir. 1962) ....................................................................................................11

Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.,
  606 F. Supp. 554 (W.D. N.Y 1985) ..........................................................................................15

STATUTES:                                                                                          PAGE

17 U.S.C. Section 101 et seq.......................................................................................................1

17 U.S.C. Section 106(4) ............................................................................................................5

17 U.S.C. Section 501(a) ..........................................................................................................10

17 U.S.C. Section 502..................................................................................................................6

17 U.S.C. Section 502(a) ..........................................................................................................12

17 U.S.C. Section 504 (c) ..........................................................................................................18

17 U.S.C. Section 504(c)(1).......................................................................................................14

17 U.S.C. Section 504(c)(2)........................................................................................................14

17 U.S.C. Section 505.............................................................................................................8, 19

28 U.S.C. Section 1338(a) ...........................................................................................................1

28 U.S.C. Section 1400(a) ...........................................................................................................1

28 U.S.C. Section 1746............................................................................................................7, 8

Fed. R. Civ. P. 36........................................................................................................................3

v

Fed. R. Civ. P. 36(a)(3)..................................................................................................................4

Fed. R. Civ. P. 56........................................................................................................................4

Fed. R. Civ. P. 56(c) ...................................................................................................................5

Fed. R. Civ. P. 56(e) ...................................................................................................................5

PUBLICATIONS:

F. Harper, F. James & O. Gray, The Law of Torts, § 26.3
  (2d ed.1986) ............................................................................................................... 11

Nimmer on Copyright, § 12.04[A] ............................................................................ 11

## I.    PRELIMINARY STATEMENT

This is an action for copyright infringement brought pursuant to 17 U.S.C. Section 101 *et. seq.* (the "Copyright Act"). Jurisdiction is vested in this Court under 28 U.S.C. § 1338(a) and venue is proper under 28 U.S.C. § 1400(a).

Plaintiffs commenced this action on September 29, 2025. Defendants filed their Answer on November 5, 2025. Plaintiffs' First Request for Admissions were served on February 2, 2026. Defendants responded to Plaintiffs' Request for Admissions on March 3, 2026 (Ex. C). Plaintiffs also served Interrogatories and Requests for Production of Documents on February 2, 2026, but Defendants have not served any responses as of this Motion.

Plaintiffs bring this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. As demonstrated below, there are no disputes of material fact remaining in this action. Accordingly, Plaintiffs are entitled to Judgment as a matter of law.

## II.    STATEMENT OF UNDISPUTED FACTS

1.    Through agreements with copyright owners such as music publishing companies and composers, BMI acquires non-exclusive public performance rights. (**Exhibit A,** Declaration of Anthony Adewumi, ¶ 2).

2.    BMI has acquired such rights from each of the other Plaintiffs in this action. (Ex. A, ¶ 2).

3.    BMI, in turn, grants to music users such as broadcasters and the owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements." (Ex. A, ¶ 2).

4.    As a matter of routine business practice, BMI sends to proprietors of establishments where music is publicly performed 1) license agreements and 2) information explaining the need to

obtain permission from copyright owners in order to lawfully publicly perform copyrighted music in their establishment. (**Exhibit B**, Declaration of John Flynn, ¶ 2).

5.    Copies of such correspondence are maintained at BMI's Licensing Office, under the supervision of Jack Flynn, Vice President, Licensing.  (Ex. B, ¶¶ 1-2).

6.    Prior to October 2023, BMI learned that Ottobar, located at 2549 North Howard Street, Baltimore, Maryland 21218, was offering musical entertainment without a license from BMI that authorized Ottobar permission to publicly perform the copyrighted music works in the BMI repertoire. (Ex. B, ¶ 3).

7.    Ottobar is operated and maintained by Defendant, Disorder LLC, and was operated and maintained by Defendant Disorder LLC on May 14, 2025, August 2, 2025, and August 3, 2025 (Ex. B, ¶ 3; **Exhibit C**, Defendants' Response to Requests for Admissions, Nos. 1, 5, 6).

8.    Defendant Tecla Tesnau is and was on May 14, 2025, August 2, 2025, and August 3, 2025, the member of Disorder LLC. (Ex. C, Response Nos. 9 & 10). Ms. Tesnau has a direct financial interest in Ottobar and was a supervisor and manager of Ottobar's employees. (Ex. C, Response Nos. 13 & 14).

9.    On October 5, 2023, BMI sent a letter to Tecla Tesnau and Ottobar and advised that a license was required. An informational brochure and a BMI license agreement containing a license fee schedule were enclosed. Defendants were advised that BMI represented hundreds of thousands of writers and publishers, and that BMI had the right to license several million musical compositions.  (Ex. B, ¶ 3).

10.    Defendants did not respond to the October 5, 2023, communication.  (Ex. B, ¶ 3).

11.    BMI sent additional letters and emails to Ms. Tesnau and Ottobar in this regard on

October 12, 2023, October 18, 2023, October 27, 2023, November 4, 2023, November 7, 2023, November 17, 2023, November 29, 2023, December 1, 2023, December 7, 2023, and December 14, 2023. Neither of the Defendants responded to BMI's communications.  (Ex. B, ¶ 4; Affidavit Ex. C)

12.    On December 14, 2023, BMI sent the Defendants a letter via FedEx addressed to the address listed for Ottobar. The letter instructed Defendants to cease the public performance of BMI-licensed music. This letter was delivered on December 19, 2023, as confirmed in the FedEx proof of delivery. (Ex. B, ¶ 5; Affidavit Exhibit A).

13.    BMI sent additional letters and/or emails notifying the Defendants of their legal obligations on January 11, 2024 and January 26, 2024. (Ex. B, ¶ 6; Affidavit Ex. C).

14.    BMI also employs licensing personnel who work under the supervision of the Licensing Directors. They assist BMI's licensing efforts by making telephone calls and personal visits to potential licensees. They make a contemporaneous note of each telephone call and personal visit made.  Copies of these records are maintained at BMI's offices, along with copies of the correspondence discussed above. (Ex. B, ¶ 7).

15.    BMI's records reflect that BMI licensing personnel telephoned Ottobar on nine (9) occasions. (Ex. B, ¶ 8).

16.    Through its efforts outlined above, BMI sought to license Ottobar. Despite BMI's efforts, the Defendants failed to enter into a license agreement with BMI.  (Ex. B, ¶ 9).

17.    To protect the rights of the publishers and writers affiliated with BMI, Paula Porsche visited Ottobar and made an audio recording and written report of the music being publicly performed there.  (Ex. B. ¶ 10).

18.    Ms. Porsche visited Ottobar on May 14, 2025. (Ex. B, ¶ 10; Affidavit Ex. B,

3

Certification of Paula Porsche, ¶¶ 1-2).

19.    Ottobar was open to the public on May 14, 2025, and musical compositions were performed at Ottobar. (Ex. B, ¶ 10; Ex. C, Response No. 19).

20.    Ms. Porsche made an audio recording of her visit to Ottobar on May 14, 2025 using a digital recorder and a new unused Secure Digital or "SD" Card.  (Ex. B, ¶ 10 & Affidavit Exhibit B, Porshce Certification ¶ 2).

21.    Ms. Porsche additionally prepared a written report memorializing her visit to Ottobar on May 14, 2025. (Ex. B, ¶ 10 and Affidavit Ex. B, Certified Infringement Report).

22.    Ms. Porsche's written report confirmed that one composition alleged in Plaintiff's Complaint had been among the compositions publicly performed at Ottobar on May 14, 2025.  (Ex. B, ¶ 11 & Affidavit Ex. B, Certification of John Davis, p. 2-6).

23.    Ms. Porsche's written report confirmed that the composition that was publicly performed at Ottobar on May 14, 2025, was Goodbye Earl. (Ex. B, p 11).

24.    Ms. Porsche sent the SD Card, which contained the digital audio recording she had made Ottobar on May 14, 2025, to BMI via overnight carrier on May 20, 2025. (Ex B; Affidavit Exhibit B, Porsche Certification, ¶ 3:).

25.    On or about May 28, 2025, BMI received via overnight carrier a SD Card from Paula Porsche, which contained a digital recording made at Ottobar on May 14, 2025. (Ex. B, Affidavit Exhibit A, Certification of Kerri Brooks, ¶ 6:)

26.    The audio recording of the May 14, 2025 visit was submitted to a BMI Performance Identification employee to review and identify or verify any additional recorded musical works or additional live performances. ((Ex. B ¶¶ 3 & 11).

27.	This review of the audio recordings confirmed that one composition alleged in Plaintiff's Complaint had been among the compositions publicly performed at Ottobar on May 14, 2025.  (Ex. B, ¶ 11; Affidavit Exhibit B, Certification of John Davis, p. 2-6).

28.	The composition that was publicly performed at Ottobar on May 14, 2025 was Goodbye Earl. (Ex. B, ¶ 10).

29.	Paula Porsche visited authorized to visit Ottobar on a second occasion and make an audio recording and written report of the music being publicly performed there. (Ex. B. ¶ 12).

30.	Ms. Porsche visited Ottobar on evening of August 2, 2025, and the early morning of August 3, 2025. (Ex. B, ¶ 12; Affidavit Exhibit B, Certification of Paula Porsche, ¶¶ 1-2).

31.	Ottobar was open to the public on evening of August 2, 2025, and the early morning of August 3, 2025, and musical compositions were performed at Ottobar. (Ex B, ¶ 12 & 13; Ex. C, Response Nos. 20)

32.	Ms. Porsche made an audio recording of his visit to Ottobar on evening of August 2, 2025 and the early morning of August 3, 2025 using a digital recorder and a new unused Secure Digital or "SD" Card.  (Ex B, ¶¶ 11-13; Affidavit Ex. B, Certification of Paula Porshce, ¶ 2).

33.	Ms. Porsche additionally prepared a written report memorializing her visit to Ottobar on evening of August 2, 2025 and the early morning of August 3, 2025. (Ex B, ¶ 12; Affidavit Ex. B, Porsche's Certified Infringement Report).

34.	Ms. Porsche's written report confirmed that the compositions that were publicly performed at Ottobar on evening of August 2, 2025 and on the early morning of August 3, 2025, were "I Just Died In Your Arms" a/k/a "(I Just) Died In Your Arms" and "Take On Me."  (Ex B, ¶ 12; Affidavit Exhibit B, Porsche's Certified Infringement Report).

5

35.    Ms. Porsche sent the SD Card, which contained the digital audio recording she had made Ottobar on evening of August 2, 2025 and the early morning of August 3, 2025, to BMI via overnight carrier on August 6, 2025. (Ex B, ¶ 12; Affidavit Ex. B, Porsche's Certified Infringement Report).

36.    On or about August 11, 2025, BMI received via overnight carrier a SD Card from Paula Porsche, which contained a digital recording made at Ottobar on evening of August 2, 2025 and the early morning of August 3, 2025. (Ex. B, ¶ 13; Affidavit Ex. B, Certification of Kerri Brooks, ¶ 6)

37.    The audio recording of the evening of August 2, 2025 and on the early morning of August 3, 2025 visit was submitted to a digital review through patented digital audio technology, licensed to BMI by Shazam Entertainment Limited, to identify any additional recorded musical works. (Ex. B, ¶ 13; Affidavit Ex. B, Certification of Kerri Brooks, ¶ 6).

38.    This review of the audio recordings confirmed that one composition alleged in Plaintiff's Complaint had been among the compositions publicly performed at Ottobar on May 14, 2025.  (Ex. B, ¶ 13, Affidavit Ex. B, Certification of Kerri Brooks, pp. 2-6).

39.    The composition that was publicly performed at Ottobar on evening of August 2, 2025 and the early morning of August 3, 2025 was "Take On Me." (Ex. B, ¶ 13).

40.    The individual(s) listed on Line 3 of each claim appearing on the Schedule annexed to Plaintiffs' Complaint is/are the writer(s) of the musical compositions listed on Line 2. (Ex. A, ¶ 3; Affidavit Ex. 1A).

41.    Plaintiffs listed on Line 4 of each claim appearing on the Schedule is/are the owners(s) of the copyright in the musical compositions listed on Line 2. (Ex. A, ¶ 3, Affidavit

6

Ex. 1A).

42.     A registration of copyright in the musical compositions listed on Line 2 of each claim appearing on the Schedule was filed with the Copyright Office on the date listed on Line 5 and a certificate was issued bearing the registration number listed on Line 6. (Ex. A, ¶ 3).

43.      On the date(s) listed on Line 7 of each claim appearing on the Schedule annexed to Plaintiffs' Complaint, BMI licensed public performance rights in the musical compositions listed on Line 2.  (Ex. A, ¶ 4).

44.     On June 16, 2025, BMI sent the Defendants a letter by FedEx and first-class mail advising of the discovered infringement.  (Ex. B ¶ 14).

45.     On June 16, 2025, BMI sent the Defendants a letter by First Class Mail advising them that the matter had been turned over to BMI's attorneys.  (Ex. B ¶ 14).

46.     BMI has not issued a license to any person authorizing the performance at Ottobar of any of the works alleged to have been infringed. Upon information and belief, none of the owners of the copyrights of any of said works has issued such a license to any person.  (Ex. B ¶ 17).

47.     The Defendants are still publicly performing music licensed by BMI at Ottobar and BMI has not received an executed license from the Defendants. (Ex. B ¶ 18),

48.     Had the Defendants entered into an agreement at the time BMI first contacted them in October 2023, the estimated license fees between October 2023 and the present would have been, approximately, $19,920.00. The current annual license fee is $6,820.00. (Ex. B, ¶ 18).

49.     Attorney's fees and costs incurred to date total $5,797.50. Fees continue to accrue at a reasonable hourly rate. (**Exhibit D**, Affidavit of Marie J. Ignozzi).

7

**III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Moreover, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials ... but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work. 17 U.S.C. § 106(4). Any person who violates this exclusive right is an infringer. *Id.* at § 501(a). As explained herein, it is undisputed that the Defendants publicly performed the Plaintiffs' copyrighted musical compositions without authorization in violation of the Copyright Act. Accordingly, Plaintiffs seek judgment as a matter of law to include an award for statutory damages, injunctive relief, attorney's fees and costs. *See id., at* § 504(c), 502 & 505.

A.    <u>There Are no Genuine Issues of Material Fact</u>

There are no genuine issues of material facts and summary judgment should be granted to Plaintiffs against Defendants.

Plaintiff Broadcast Music, Inc., as agent for Broadcast Music, LLC, ("BMI") is a

8

"performing rights society," which licenses the right to publicly perform copyrighted musical compositions works on behalf of the copyright owners of these works. *See* 17 U.S.C. § 101. The other Plaintiffs are the copyright owners of various compositions which are the subject of this lawsuit. (**Exhibit A**, Declaration of Anthony Adewumi, Attorney, Legal ("Adewumi Declaration") ¶ 3). Under the Copyright Act, the owners of copyrights in musical compositions possess the exclusive right to authorize public performances of their works. *Id.* at § 106(4).

Through agreements with copyright owners such as music publishing companies and independent composers, BMI acquires non-exclusive public performance rights. **Ex. A**, Adewumi Declaration, ¶ 2. BMI has acquired such rights from each of the other Plaintiffs in this action. **Ex. A,** Adewumi Declaration, ¶ 4.

BMI, in turn, grants to music users such as broadcasters and the owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements." **Ex. A**, Adewumi Declaration, ¶ 2. These agreements have been recognized as the most practical means to exploit copyright owners' public performance rights. *See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979); *Broadcast Music, Inc. v. Moor-Law, Inc.*, 484 F. Supp. 357 (D. Del. 1980), 527 F. Supp. 758 (D. Del. 1981), *aff'd without published opinion*, 691 F. 2d 491 (3d Cir. 1982).

Defendants, Disorder LLC and Tecla Tesnau, each individually own and operate Ottobar (the "Establishment" or "Ottobar"), which regularly features performances of live and recorded music. (**Ex. A**, Adewumi Declaration; **Ex. C**, Defendants' Responses to Request for Admissions ("Admissions")).

As more fully set forth in the Declaration of John Flynn, Vice President, Licensing, (the

9

"Flynn Declaration"), which accompanies this Motion as Exhibit B, between October 2023 and June 2025, BMI repeatedly informed the Defendants of the need to obtain permission for public performances of copyrighted music. (**Exhibit B**, Flynn Declaration ¶¶ 3-6). On numerous occasions, BMI offered to enter into a license agreement with the Defendants, but the Defendants did not respond and have not entered into a license agreement. (**Ex. B**, Flynn Declaration, ¶ 9).

On December 14, 2023, BMI instructed the Defendants to cease public performances of music licensed by BMI. (**Ex. B**, Flynn Declaration, ¶ 5). Nevertheless, public performances of BMI-licensed music continued at Ottobar after that date and performances of songs owned by the Plaintiffs were chronicled by a BMI investigator on May 14, 2025, August 2, 2025, and August 3, 2025. (**Ex. B**, Flynn Declaration, ¶¶ 10, 12). Specifically, BMI's investigator generated a written report of the songs played at Ottobar on those nights, which includes the songs that are the subject of this infringement action. *Id*.

There are no material disputed facts in the record, only bald denials set forth in discovery responses. By their response to Plaintiffs' First Request for Admissions, Defendants denied that BMI offered to grant them a license for the public performance of musical compositions at Ottobar and also denied the Defendants were licensed by any of the Plaintiffs to publicly perform any of their musical compositions on May 14, 2025, the evening of August 2, 2025 and the early morning of August 3, 2025. (**Exhibit C,** Response Nos. 24-27).  Defendants also denied that music was played at Ottobar on either May 14, 2025, the evening of August 2, 2025 and the early morning of August 3, 2025. (**Ex. C**, Response Nos. 21-23).

Defendants admit that on May 14, 2025, August 2, 2025, and August 3, 2025, Defendant Disorder LLC operated and maintained the Establishment, had right and ability to direct and control

the activities of the Establishment and had a direct financial interest in the Establishment. (**Ex. C,** Response Nos. 1-8). In addition, Defendants admit that Defendant Tecla Tesnau had the right and ability to supervise the persons employed by Ottobar on May 14, 2025, August 2, 2025, and August 3, 2025. (**Ex. C**, Response Nos. 13, 17).

To prevail in an action for copyright infringement, Plaintiffs must establish the following five elements:

1.   Originality and authorship of the copyrighted works involved;
2.   Compliance with the formalities of the Copyright Act;
3.   Proprietary rights in the copyrighted works involved;
4.   Public performance of the compositions involved; and
5.   Lack of authorization for public performance.

*Broadcast Music, Inc. v. Pine Belt Investment Devels., Inc.,* 657 F. Supp. 1016 (S.D. Miss. 1987); *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F. Supp. 629 (D.N.H. 1986); *Milene Music v. Gotauco*, 551 F. Supp. 1288 (D.R.I. 1982); *Boz Scaggs Music v. KND Corp.,* 491 F. Supp. 90 (D. Conn. 1980).

The Adewumi Declaration, referring to the Schedule of the Complaint, sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration number. (**Ex. A**, ¶ 4). The Adewumi Declaration is supplemented with copies of each registration certificate and subsequent documentation relating to the chain of ownership of the songs. There are no disputes to these facts and none identified by Defendants. The first three elements are established in the Adewumi Declaration which constitutes sufficient evidence of the facts sworn to therein. 28 U.S.C. § 1746.

By their Response to the Plaintiffs' First Request for Admissions, specifically, Numbers 28, 30, and 32, Defendants do not dispute the elements of originality, proper registration, and

11

proprietary interest. (**Ex. C**). *See e.g., Pine Belt Invest. Devels.,* 657 F. Supp. at 1020; *Gotauco*, 551 F. Supp. 1288. Defendants also do have any evidence to rebut the Plaintiffs' proof on these three points confirmed in their Responses Numbers 29, 31, and 33. (**Ex. C**).

The fourth element, public performance, is established by the Certified Infringement Report of Paula Porsche who was hired by BMI for the purpose of visiting the Establishment and making written reports of musical compositions which were performed. (**Ex. B**, Flynn Declaration, ¶¶ 10, 12). Paula Porshce's Certified Reports are attached to the Flynn Declaration in Exhibit B, and, as discussed in more detail below, it is clear that performance of the music may also be established by Certification. *See* 28 U.S.C. § 1746; *Pine Belt Invest. Devels.,* 667 F. Supp. at 1020; *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629.

The fifth element, lack of authorization, is similarly established in the Flynn Declaration and likewise undisputed by the Defendants. The Flynn Declaration verifies that the Defendants did not enter into a BMI license agreement, nor were the performances otherwise authorized. Moreover, Defendants continued to publicly perform copyrighted music without permission after being instructed to cease, as indicated by the Certified Infringement Report. (**Ex. B**, Flynn Declaration, ¶ 11 and Affidavit Exhibit B).

        B.     <u>The Defendants Are Vicariously Liable for Acts of Infringement Committed at Ottobar</u>

Disorder LLC is itself liable for infringing acts committed at the Ottobar establishment. *See Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 961 (N.D. Ill. 1985) ([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance) (*citing Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975)). Similarly, as a member of Disorder LLC, Defendant Tecla Tesnau is the member directly controlling Ottobar and is liable for

the infringing acts committed at Ottobar.  *See Sailor Music,* 640 F. Supp. at 633 (a corporate officer

is liable as a joint tortfeasor in a copyright infringement action where the officer was the dominant

force in the corporation and determined the policies which resulted in the infringement).

The Copyright Act, at 17 U.S.C. Section 501(a), provides that "[a]nyone who violates any of

the exclusive rights of the copyright owner as provided by Sections 106 through 121 . . . is an

infringer of the copyright . . ." Interpreting the equivalent section under the Copyright Act of 1909,

the Second Circuit Court of Appeals stated: "Although the Act does not specifically delineate what

kind or degree of participation in an infringement is actionable, it has long been held that one may

be liable for copyright infringement even though he has not himself performed the protected

composition." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F. 2d 1159, 1161-62

(2d Cir. 1971).

In an earlier Second Circuit case, the Court stated:

[T]he cases are legion which hold the dance hall proprietor liable for the
infringement of copyright resulting from the performance of a musical composition
by a band or orchestra whose activities provide the proprietor with a source of
customers and enhanced income.  He is liable whether the band leader is considered,
as a technical matter, an employee, or an independent contractor and whether or not
the proprietor has knowledge of the compositions to be played or any control over
their selection.

*Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc.,* 316 F. 2d 304, 307 (2d Cir. 1963);

*Broadcast Music, Inc. v. The Peppermint Club, Inc.,* 229 U.S.P.Q. 534, 537-38 (N.D. Ohio 1986).

As the sponsor of the public performances, the corporate Defendant Disorder LLC. is liable

for infringement at Ottobar. *See Niro's Palace, Inc.,* 619 F. Supp. at 961 (*citing Twentieth Century*

*Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) (not only is the performer liable for infringement,

but so is anyone who sponsors the performance)). The corporate Defendant, Disorder LLC is

13

likewise responsible for the tortious actions of their employees under the doctrine of *respondeat superior*. *Wihtol v. Crow*, 309 F.2d 777, 782-783 (8th Cir. 1962); *M. Witmark & Sons v. Calloway,* 22 F.2d 412, 414 (D.Tenn. 1927). *See generally F. Harper, F. James & O. Gray,* The Law of Torts, §26.3 (2d ed. 1986). *See also Nimmer on Copyright*, §12.04[A].

Not only are Disorder LLC liable for infringements occurring at Ottobar, but Tecla Tesnau is individually liable. "A corporate officer is jointly and severally liable, with his corporation for copyright infringement if he (1) 'had the right and ability to supervise the infringing activity', and (2) 'has a direct financial interest in such activities'." *The Peppermint Club, Inc.,* 229 USPQ at 538, (*quoting Warner Bros., Inc. v. Lobster Pot, Inc.,* 582 F. Supp. 478, 483 (N.D. Ohio 1984)). *See also Nick-O-Val Music Co. v. P.O.S. Radio, Inc.,* 656 F. Supp. 826, 828 (M.D. Fla. 1987); *Milene Music, Inc.* 551 F. Supp. at 1295; *Boz Scaggs Music* 491 F. Supp. at 913-14. Defendant Tecla Tesnau as the member of Disorder LLC and manager for Ottobar had responsibility for the day to day activities there.

## IV.    PLAINTIFFS ARE ENTITLED TO THE RELIEF THEY REQUEST

Pursuant to 17 USC 502 & 504(c), Plaintiffs request permanent injunctive relief, statutory damages for each of the claims of infringement, costs and reasonable attorney's fees. Each aspect of the requested relief is briefly discussed below.

### A.    Injunctive Relief

Musical performances are obviously important to the operation of Ottobar. "If music did not pay, it would be given up." *Herbert v. The Shanley Co.,* 242 U.S. 591, 595 (1917).  It is clear from the fact that a BMI investigator logged unauthorized performance of music in the BMI repertory - - long after Defendants' receipt of numerous calls and letters from BMI - - that Defendants did not

14

give it up. Plaintiffs therefore seek injunctive relief to prevent further copyright violations. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007).

17 U.S.C. § 502(a) provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright." As one court has stated in a case similar to this:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists. . . The threat of continuing infringement is substantial in the present case.  Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI.  This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

*Niro's Palace, Inc.,* 619 F. Supp. at 963. Here, as in *Niro's*, the Defendants willfully disregarded the copyrights held by the Plaintiffs, as well as oral and written notice and continued to perform copyrighted musical compositions for years with no license to do so.

Even where Defendants have secured licenses after the time of the infringements, injunctive relief is warranted.  In *Milene Music*, the defendants were licensed by the time the court considered the plaintiffs' Motion for Summary Judgment.  The Court granted injunctive relief stating that "[t]he history of defendants' actions...exhibits an unfortunate tendency conveniently to ignore, from time to time . . . the plaintiffs' proprietary rights."  551 F. Supp. at 1295-96; *see also Sailor Music*, 640 F. Supp. at 634-35.

In this instance where the Defendants are, as of yet, unlicensed and continue to offer unauthorized performances of the Plaintiffs' music, broad injunctive relief is appropriate and necessary.

### B.    Statutory Damages

The Copyright Act empowers a Plaintiff to elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement in lieu of an award

representing the Plaintiffs' actual damages and the Defendant(s)' profits. 17 U.S.C. § 504(c)(1).

Furthermore, "[i]n a case where the copyright owner sustains the burden of proving...that

infringement was committed willfully, the court in its discretion may increase the award of statutory

damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Within these statutory limits,

the assessment of damages is at the discretion of the court. *See F.W. Woolworth Co. v.*

*Contemporary Arts, Inc.,* 344 U.S. 228, 231-32 (1952).

Statutory damages are "designed to discourage wrongful conduct...and vindicate the

statutory policy." *Id.* at 233. "The court's award should be designed to compensate plaintiffs as well

as to punish defendant[s]." *Prater Music v. Williams,* 5 USPQ2d 1813, 1816 (W.D. Mo. 1987).  To

further discourage continued abuse and give effect to the Copyright Act, the amount awarded in

statutory damages should significantly exceed the amount of unpaid license fees. *See EMI Mills*

*Music, Inc. v. Empress Hotel, Inc.,* 470 F. Supp.2d 67, 75-76 (D. Puerto Rico 2006).  As the court in

*Prater Music* held:  "If the copyright laws are to have any effect, a judgment against [a] defendant

must be appreciably more than the amount he would have had to expend to obtain permission."  5

USPQ at 1816. Music users such as the Defendants should be "put on notice that it costs less to

obey the copyright laws than to violate them." *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp.

889, 892 (W.D. Pa. 1985), *quoting Music City Music v. Alfa Foods Ltd.,* 616 F. Supp. 1001, 1003

(E.D. Va. 1985).  *See also Broadcast Music, Inc. v. Triple L Vending, Inc.,* 5 USPQ2d 1346, 1349

(W.D. Tex. 1987); *Halnat Pub. Co. v. L.A.P.A., Inc.,* 669 F. Supp. 933 (D. Minn. 1987).

As set forth in the Flynn Declaration, when BMI first contacted the Defendants on October

5, 2023, Ottobar was asked to execute a license agreement. (**Ex. B**, ¶ 3). Despite the numerous calls

and letters to date, and during the course of this litigation, Defendants have not entered into a license

16

agreement with BMI nor paid any license fees to BMI, while Defendants continue to operate and remain in business. (**Ex. B**, ¶¶ 9, 17).

The Court, in its discretion, may also augment the amount of statutory damages awarded to reflect the degree of culpability exhibited by the Defendants. *See Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.,* 606 F. Supp. at 555-57. "Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful*." Prater Music v. Williams*, 5 USPQ2d at 1815; *accord Intern'l Korwin Corp. v. Kowalczyk*, 855 F. 2d. 375 (7th Cir. 1988); *Nick-O-Val Music Co., Inc. v. P.O.S. Radio, Inc.,* 656 F. Supp. at 829; *Rodgers,* 623 F. Supp. at 892.

The record supports a finding that the Defendants deliberately violated the Plaintiffs' rights. As set forth in the Flynn Declaration, since October 2023, and between May 14, 2025, August 2, 2025, and August 3, 2025, BMI sent letters to the Defendants and repeatedly advised them of the need to enter into a license agreement**. (Ex. B, ¶¶** 4-6, 14). A BMI representative telephoned Defendants on nine (9) occasions. (**Ex. B**, ¶ 8). On December 14, 2023, BMI sent Defendants an overnight letter informing them that they must immediately cease unauthorized performances of BMI-licensed music, with multiple follow up letters, which letter was confirmed delivered. (**Ex. B,** ¶ 5). Despite all of this, a BMI investigator made a written record of the performance of three (3) BMI-licensed compositions after that date. (**Ex. B**, ¶¶ 10, 12).

There is no doubt the infringement was knowingly made. Thus, Plaintiffs should be awarded damages well in excess of the statutory minimum. Within the limits of $750 and $30,000 per infringement, the amount of any statutory damages award is within the discretion of this Court. 17 U.S.C. §504(c) (1999). For the three (3) acts of infringement described in the Complaint, Plaintiffs

17

request a total award of $60,000 for statutory damages, which represents an award of $20,000 for

each of the three (3) infringements, and is well within the range set forth in the statute. This figure

also represents, approximately, three times the amount Plaintiffs lost in revenues which it would

have received from Defendants in licensing fees had their establishment been properly licensed for

the past three years. (Ex. B, ¶¶ 3-5)

Courts consistently have held that a statutory damages award three times the amount that the

plaintiff would have received in licensing fees is appropriate under Section 504(c). *See Chi-Boy*

*Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1229-30 (7th Cir. 1991); *Broadcast Music, Inc. v. Buck*

*Wild Saloon, LLC d/b/a Buck Wild Saloon, et al.,* No. 3:11-cv-00165 (M.D. TN December 5, 2011)

(awarding $8,000 for each of 5 copyright violations); *Broadcast Music, Inc., et al. v. Cameron*

*Hospitality, Inc. d/b/a Fosters, et al.,* No. 5:11-CV-152-BO (E.D.N.C. August 11, 2011) (awarding

$7,612.50 for each of 4 copyright violations) *Broadcast Music, Inc. v. Pub Dayton, LLC, et al.,* No.

3:11-cv-58, 2011 U.S. District LEXIS 57211 (S.D. Ohio May 27, 2011) (awarding $7,750 for each

of 4 copyright violations); *Broad. Music Inc. v. V3 Club Company LLC d/b/a The Highlands, et al,*

cv-09-08039 (C.D. CA June 21, 2010) (awarding $9,000 for each of the 9 copyright violations);

*Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1153 (S.D. Ga. 1994) (awarding three times

what defendant would have paid ASCAP to be licensed). *Broadcast Music, Inc. v. Entertainment*

*Complex, Inc.,* 198 F. Supp. 2d 1291 (N.D. Ala. 2002) (awarding $3,909.09 for each of 11

copyright violations) *See also Sailor Music v. IML Corp.,* 867 F. Supp. 565, 570 (E.D. Mich. 1994)

(reviewing "a survey of statutory awards throughout the country, all of which indicate that the

courts typically award three times the amount of a properly purchased license for each

infringement") (collecting cases). Therefore, Plaintiffs request is a modest, just, and appropriate

18

statutory damages award.

C.      <u>Attorney's Fees and Costs</u>

The Copyright Act expressly provides that the "court may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Because it is consistent with the purpose of the Copyright Act, courts routinely award the reasonable fees incurred by a Plaintiff asserting its rights. *See Triple L Vending, Inc.,* 5 USPQ2d at 1349-52; *Broadcast Music, Inc. v. Fox Amusement Co.,* 551 F. Supp. 104 (N.D. Ill. 1982); *Milene Music, Inc. v. Gotauco*, 551 F. Supp. at 1297.

In the present case, the Defendants have intentionally ignored their obligation under the Copyright Act and have forced Plaintiffs to engage in litigation to enforce their rights. Accordingly, Plaintiffs should be awarded full attorney's fees.

The Copyright Act expressly provides that the court "in its discretion may allow the recovery of full costs by or against any party ..." 17 U.S.C. § 505.  Under this provision, the courts have allowed full recovery by the prevailing party of its reasonable costs.  *See Milene Music, Inc. v. Gotauco*, 551 F. Supp. at 1297. There are no factors which would militate against an award of the Plaintiffs' costs in the present case. Such an award is particularly appropriate in light of the Defendants' deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act.

The Declaration of Marie J. Ignozzi, **Exhibit D,** sets forth the attorney's fees and costs billed to Plaintiffs. As set forth in her affidavit, fees and costs incurred to date are $5.797.50, and continue to accrue at a reasonable hourly rate. Plaintiffs request additional fees to cover the cost of future expenses associated with securing and collecting any judgment.

19

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court:

(1)    Enter Summary Judgment in its favor against each Defendant, jointly and severally;

(2)    Enter an order permanently enjoining Defendants from further acts of infringement;

(3)    Award Plaintiffs statutory damages of Sixty Thousand Dollars ($60,000) which is Twenty Thousand Dollars ($20,000) for each of the three (3) acts of copyright infringement alleged in the Complaint;

(4)    Award Plaintiffs their full costs;

(5)    Award Plaintiffs their reasonable attorney's fees; and

(6)    Grant such other and further relief as the Court deems appropriate.

May 7, 2026

_____/s/ *Marie J. Ignozzi*_____
Marie J. Ignozzi (Bar #29762)
RKW, LLC
10075 Red Run Blvd., Suite 401
Owings Mills, MD 21117
(443) 379-8992
mignozzi@rkwlawgroup.com
*Attorneys for Plaintiffs*

20