**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| BROADCAST  MUSIC, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISORDER LLC d/b/a OTTOBAR and<br>TECLA TESNAU, individually,<br><br>Defendants. | Civil Action No.:  1:25-cv-03218-JMC |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff, Broadcast Music, Inc. ("BMI"), initiated the present lawsuit on September 29, 2025, against Defendants Disorder LLC d/b/a Ottobar ("Disorder") and Tecla Tesnau ("Tecla") (together, "Defendants") alleging three claims of copyright infringement pursuant to 17 U.S.C. § 101 *et. seq.* (the "Copyright Act"). (ECF No. 1). Plaintiff amended the Complaint on January 26, 2026 (ECF No. 23) to incorporate an Exhibit. *Id.*  Presently pending before the Court are BMI's Motion for Summary Judgment (ECF No. 30) and BMI's Line Submitting an Amended Affidavit. (ECF No. 33).  The motions are fully briefed (ECF Nos. 30, 32, 33, 34) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Broadcast's motion summary judgment (ECF No. 30) will be GRANTED and BMI's Line Submitting an Amended Affidavit (ECF No. 33) is accepted.

## I.     BACKGROUND

This case arises from the unauthorized public use of three songs to which BMI has exclusive title.  *See generally* (ECF No. 23).  BMI acquires non-exclusive public performance rights through agreements with copyright owners such as music publishing companies and

composers. (ECF No. 30-2 at 1). BMI has acquired the rights to each musical work at issue from each of the other Plaintiffs in the present litigation. *Id.* BMI, in turn, grants to music users such as broadcasters, concert halls, restaurants, nightclubs, and other venues the right to publicly perform any of the works in its repertoire by way of "blanket license agreements." *Id.* Plaintiffs allege multiple claims of willful copyright infringement of certain musical works for which BMI has licenses based on the unauthorized public performance of those works. *Id.* at 2.

Plaintiffs have demonstrated that in October 2023, Ottobar, located at 2549 North Howard Street, Baltimore Maryland 21218, engaged in the unauthorized public use of three songs, "I Just Died in Your Arms" published by Plaintiff Sony/ATV Songs LLC, "Take On Me" published by Plaintiff Sony/ATV Songs LLC, and "Goodbye Earl" published by Plaintiff EMI Blackwood Music Inc. *Id.* at 3-4. Plaintiffs have provided the Certificate of Registration for each song. *Id.* at 5-6, 51-53, 90-91.

On October 5, 2023, BMI sent a letter to Ottobar and advised that a license was required to play the music. (ECF No. 33-1 at 2). BMI sent similar letters and emails on October 12, October 18, October 27, November 4, November 7, November 17, November 29, December 1, December 7, and December 14 of 2023 and made multiple phone calls. *Id.* BMI eventually sent a representative, Paula Porsche, to take an audio recording at Ottobar for further inspection. *Id.* at 3. Recordings were taken on May 14, 2025, August 2, 2025, and August 3, 2025. *Id.* Review confirmed that Ottobar played each of the three songs at issue in this case. *Id.* at 4. After the filing of the summary judgment briefs, BMI received an occupancy report from the Baltimore City Fire Department indicating a total of 306 patrons may occupy Ottobar, which allowed Plaintiffs to make a more accurate estimate of their lost revenues. *Id.* Plaintiffs state that the estimated lost revenues for infringements between October 2023 and the present day would have been

approximately $14,091.30, and the current annual license fee would be $4,819.50.  *Id.* at 5. Defendants have conceded liability but argue genuine issues of material fact remain concerning Plaintiffs' actual damages.  (ECF No. 32).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because

it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III.    ANALYSIS

In their Opposition Brief, Defendants "concede liability and do not oppose the entry of partial summary judgment as to liability only as to each of the Defendants." (ECF No. 32 at 1). At the same time, they "oppose the entry of summary judgment on the issue of damages and suggest that the nature and amount of damages are more appropriately determined by the Court after a hearing, argument of counsel and the opportunity of the Court to engage in questioning in order to come to a well informed decision." *Id.* In Plaintiffs' Reply brief, they state "there is no need for a hearing on damages as Plaintiff seeks statutory damages pursuant to 17 USC § 501, et. seq., arising from Defendants' willful copyright infringement, which has been admitted." (ECF No. 34 at 2). Thus, they do "not seek actual damages so the cost of the license and Plaintiff's lost revenues are not necessary." *Id.* Plaintiffs state that information was "included only for context for the Court's consideration of a reasonable award." *Id.* Thus, statutory damages are the only issue before the Court, and in view of Defendants' concession to liability, the Court will GRANT summary judgment on the issues of both liability and damages.

### A.    Plaintiffs are Entitled to Permanent Injunctive Relief

Plaintiffs first request an order enjoining future infringements. (ECF No. 30). Under 17 U.S.C. § 502, the Court has authority to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Here, there is undisputed evidence showing BMI continued to infringe after it had notice of the infringements for multiple years. Accordingly, the Court will order that Defendants be permanently enjoined from further infringement of any copyrighted musical compositions licensed by BMI.

**B.      Plaintiffs are Entitled to $12,048.75 in Statutory Damages**

As remedy for infringement, the owner of properly registered copyrights may elect to recover either (1) its actual damages plus the infringer's profits, or (2) statutory damages. *See* 17 U.S.C. § 504(a); *see also id.* § 412. Here, Plaintiffs have made clear they seek only statutory damages pursuant to the Court's discretion.  Under 17 U.S.C. § 504(c)(1), courts have discretion to award statutory damages ranging from $750 to $30,000 per act of copyright infringement and up to $150,000 for willful infringement. *See Jet Creations, Inc. v. Zhejiang Weilong Plastic Prod. Co.*, Case No. 24-cv-1340-JKB, 2025 WL 2533667, at *7 (D. Md. Sept. 3, 2025) (quoting *Malibu Media, LLC v. [Redacted]*, Case No. 14-cv-261-PWG, 2017 WL 633315, at *2 (D. Md. Feb. 15, 2017) ("The court has broad discretion in setting the amount of statutory damages under the Copyright Act.")).  "[C]ourts within the Fourth Circuit consider several factors when awarding statutory damages including: (1) the expenses saved and the profits earned by the defendant in connection with infringement, (2) revenues lost to the plaintiff, (3) the willfulness of the infringement, (4) the conduct of the parties, and (5) the deterrent effect on the defendant." *Id*. (quoting *Broadcast Music, Inc. v. Acapulco, Inc.*, Case No. 22-cv-147, 2024 WL 1181877, at *3 (E.D. Va. Mar. 19, 2024)).

Courts have generally found statutory damages equal to approximately two or three times the amount a plaintiff would have received in licensing fees to be reasonable. *See Broadcast Music Inc. v. Santoro, Inc.*, Case No. 16-cv-399, 2016 WL 1571999, at *1 (D. Md. April 19, 2016) (citing *Broadcast Music, Inc. v. Star Amusements, Inc.*, 44 F.3d 485, 488, 489 (7th Cir. 1995); *Canopy Music Inc. v. Harbor Cities Broad., Inc.*, 950 F. Supp. 913, 917 (E.D. Wis. 1997) (each awarding statutory damages of approximately twice the licensing fee)).  The Copyright Act permits a court to increase statutory damages to a maximum of $150,000 if "the copyright owner

5

sustains the burden of proving ... that infringement was committed willfully." *Id.* § 504(c)(2). "Willfulness" means that the infringer either had actual knowledge that it was infringing the owner's copyrights or acted in reckless disregard of those rights. *Malibu Media*, 2017 WL 633315, at *2; *Brown v. McCormick*, 87 F. Supp. 2d 467, 482 (D. Md. 2000).

Plaintiffs asks for a total award of $60,000 for statutory damages, which represents an award of $20,000 per infringed work. (ECF No. 30-1 at 24). Plaintiffs also state that because each infringement is willful, the Court has discretion to award up to a total of $150,000. First, it is true that Defendants have conceded that their infringement was willful. (ECF No. 32 at 1). In supporting documentation, Plaintiffs submitted a declaration from John Flynn, BMI's Assistant Vice President. (ECF No. 33-1). Although the Court will certainly take this issue into consideration, the Court does not find the present circumstances to warrant a maximum willful damages award. For example, Mr. Flynn avers that the lost revenues between October 2023 and the present day would have been approximately $14,091.30, and the current annual license fee would be $4,819.50. *Id.* at 4. Considering the disparity between an award of $150,000, or even $20,000 per work and the value of the licensing fee, the Court does not find that the circumstances here warrant such a high deterring impact. Similarly, despite the evidence of lost revenues, there is no evidence of Defendants' profits. The Court further observes the undisputed evidence of the BMI's two years' worth of effort to communicate with Defendants about the copyright infringements, to no avail. Taking the general approach, courts would find approximately two times the amount BMI would have received in licensing fees reasonable. *See Santoro*, 2016 WL 1571999, at *1; *Jet Creations, Inc.*, 2025 WL 2533667, at *7 (recognizing that courts consider lost revenues, among other factors). Here, the total value of the licensing fees are $4,819.50. Based on Defendant's concession that the infringement was willful, the Court finds appropriate an award

6

of 2.5 times the licensing fee resulting in total statutory fees in the amount of $12,048.75.  Post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961.

### C.    Plaintiffs are Entitled to 6,500.00 in Attorneys' Fees

Plaintiffs also ask for reasonable attorneys' fees. Under the Copyright Act, the "court in its discretion may allow the recovery of full costs by or against any party," and a court may also "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994) (reciting the factors courts are to consider in determining whether an award of attorneys' fees is appropriate).  In deciding whether the number of hours spent and the rate are reasonable, courts consider these twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). Here, the Court observes that Plaintiffs' counsel is a partner at a reputable law firm, RKW, LLC.  (ECF No. 30-6 at 1).  She has been practicing law for over sixteen years, primarily with a focus on matters involving commercial disputes, complex business litigation, and copyright infringement and related statutory claims.  *Id.* at 1-2.  Plaintiffs' Counsel charged fees at a rate of $300.00 per hour, showing total fees billed in the amount of $3,847.50 and additional fees in the amount of $1,950.00 which represents services rendered since May 1, 2026, but not yet billed.  *Id.* at 2.  These rates are consistent with Appendix B to the Court's Local Rules.  See Loc. R. App. B (D. Md. 2025).  Here, the total fee request is for $5,797.50, with the caveat that Plaintiff will continue to accrue additional

fees at the rate of $300 per hour and urges the Court to consider the amount BMI will incur to prosecute the action to its conclusion. *Id.* at 3. Plaintiffs' Counsel does not include any argument for costs. The legal issues here are not particularly complex, but there is no doubt that Plaintiffs' counsel has offered experience, reputation, and positive results for her client. Moreover, the fees represent a very small portion of the total amount in controversy.

The Court therefore finds reasonable a total award of $6,500.00 in attorneys' fees, representing the fees billed, those yet to be billed, and allotting $702.50 for work to be performed on the case.

## IV.    CONCLUSION

For the foregoing reasons, it is this 23rd day of June 2026 so ORDERED:

(1)    Plaintiff's Motion for Summary Judgment (ECF No. 30) is GRANTED against each Defendant, jointly and severally;

(2)    Defendants are permanently enjoined from further acts of infringement;

(3)    Plaintiffs are awarded $12,048.75 in statutory damages;

(4)    Plaintiffs are awarded $6,500.00 in attorneys' fees and costs; and

(5)    Plaintiffs' Line Submitting an Amended Affidavit (ECF No. 33) is accepted.

_____/s/_____
J. Mark Coulson
United States Magistrate Judge

8